The next case on calendar for argument is another Attebury Grain case. This is Attebury Grain v. Grayn Company, Case No. 18-56325. Counsel? It's my understanding that there will be a sharing of time in this case? I think Mr. Brownstein will write. Yes. So are you going to share your argument time? I don't believe so, Your Honor. I'll leave it to Brownstein on behalf of Grayn Company. All right. Thank you. Good morning again, Your Honor. Robert Altagan on behalf of the appellant. This particular case relates to the fact that it was our contention that when the Court of Appeals ruled, which is contained in the excerpt of the record, the original appellate opinion, which was submitted by the Court of Appeals, affirmed and reversed in part, that my client, Vincente Cortez, paid $140,000 to purchase approximately, according to the record, $306,000 in equipment from Superior when Superior went out of business. He then formed the Grain Company, several months went by, and then started operating the Grain Company. The Court of Appeals affirmed the judgment, the summary judgment by Judge Reel in part and reversed in part and mandated that the Court of Appeal mandated, this Court mandated, that a hearing be held, maybe that's not the right language, that something be held to determine the amount of damages that were due based upon the fraudulent transfer claims alone. That's exactly their language. And with regard to that, the district court requested people to file status reports, which we did. Then several days later, the status reports, we got an order saying there'd be no oral argument, there's no reason to have an oral argument, there's no reason to have a hearing, and simply ruled that the value of the fraudulent transfer was exactly the amount of the arbitration award and the underlying judgment. You're not suggesting that a hearing was required, are you? No. What I'm suggesting is they stated that they had to determine the amount of damages due on the fraudulent transfer claims alone. So why does it matter that no hearing was, that there was no hearing? Because the Court of Appeal in its opinion said that Mr. Cortez paid $140,000 for equipment and in the record the value of the equipment was alleged to be $306,000 and some miscellaneous corn. That's what was purchased. Their argument was the business was bankrupt at that time, could not pay Atterbury's bill, and was unable to continue to buy corn, to process corn. The business was defunct. Mr. Cortez, who started the original business and had sold it to his children, basically came back and said the equipment's worth, I believe, about $140,000, wrote checks to Superior for $140,000, and simply started the business several months later again. So, counsel, correct me if I'm wrong, but I thought the issue in this case was whether or not the arbitration award, the creditor's claim, was less than the value of the assets transferred. That's basically what the issue in the case is, and there was the evidence to support the judgment that was ultimately rendered was simply, the judge says, the evidence that was submitted, which is the amount of the arbitration award. There was virtually no evidence submitted as to what the value of the business was at the time where the court of appeals said, because in a fraudulent transfer action, you're only entitled to the value of what was transferred. Correct. That's it. You're not entitled to your original judgment. And in the record... Well, you are if the judgment is less than the value of the assets transferred. I absolutely agree with that. But in the record, the value of the property that was transferred was $306,000, and the amount paid was $140,000. Well, but the amount transferred was the whole business. That's what was transferred. Yeah, but the business wasn't transferred. The business was closed. Well... That's the argument, the whole business, but that's not the facts. The business was closed. The business did not reopen for several months. It was closed. It was dead. But that was the whole point, that it was a fraudulent transfer. Correct? No, the point was the business was on the verge of closing or had closed. Mr. Cortez came in realizing that he was not involved in the Atterbury transaction. He had stepped away from the business. He spent a lot of his time in El Salvador. He comes back. They have this arbitration award against the company for $1 million or $825,000 for grain. They can't pay it, and the business was shut. What was the difference? Was it Superior, the original company? Superior was the... What was the difference between Superior and Grain Company? What was the difference between those businesses? Superior had been a business owned by Mr. Cortez. In 2009, Mr. Cortez sold to his adult children the business. In 2011... How did it differ? What was the nature of the business, Superior and Grain? What was the difference in the operation of those businesses? It wasn't any different. Right. That's the point. That's the point for which he paid $140,000 for the value of the equipment. They claimed the equipment was worth $306,000. Not just the equipment, the business. The business was closed. The business had no value. The business couldn't operate. The business couldn't buy corn to clean to sell to its customers. And the business was shut down. The business did not operate. I think opposing counsel probably sees that differently. Well, I don't know how we can see it differently where the facts are undisputed that it was closed for a period of time before it was reopened as a grain company. And money was paid for the equipment. They believed the value of the equipment was a fair price. And the court of appeals said determine what the value was between the property that was transferred and what was paid for. I don't think the court of appeals determined that. No, it did. It sent it back to determine that. Correct. And then the district court reinstated its award because they dismissed the prior opinion of this court, affirmed it, reversed and remanded it as to one aspect, which was an unjust enrichment claim. And then it went back down to the district court, and the district court concluded that the amount of the original damages stood. I mean, at this point, this arbitration award was entered against your clients almost 10 years ago, 8 or 9 years ago. No, it was entered against my client, the arbitration award. The arbitration award was entered against Superior Corporation. It had nothing to do with my client. But there's now been multiple findings, including by this court, that the transfers at issue at multiple stages here were fraudulent. Yeah, the transfers were fraudulent. And the word fraudulent implies evil intent and a lot of other things. All that happened here was the amount of money paid for the transfer of the merchandise received was less than reasonably equivalent value. They're saying acknowledged that $140,000 was paid, and it was worth $306,000. And then there's the judgment for close to a million dollars. And then the court of appeal, this court found and told the court to define what were the damages based upon the fraudulent transfer alone. And as this court recognizes, it's the value of the property transferred, not the amount of the judgment, whichever is less. And I don't believe there was sufficient evidence in the matter when it went back after the mandate to support the finding. Is that last statement, is that a challenge you've made on this appeal? Yes. I mean, basically all I'm saying on this appeal is we wanted a hearing or some evidence to show that the amount of the judgment was exactly the same amount as the arbitration award. But I asked you earlier in your argument whether or not you were taking the position that it was error to not have a hearing. And you said you were not, you did not challenge the fact that the district court elected not to have a hearing. You should have had a hearing, but I can't control what the district court does. Exactly. So there was not error. There was no legal error in making the ruling without having an evidentiary hearing. The only legal error would be there was no evidence to support the finding without a hearing. All right. All right, counsel. I think we understand your argument. I think your opposing counsel might want to have a say on rebuttal. You stood up. Did you want to say something? I do, Your Honor. All right. Start the clock. Thank you very much. Your Honor, thank you for letting me speak. I represented Superior Grain in the Chapter 7 case. Chapter 7 case was filed. An independent, neutral, disinterested trustee was appointed. The trustee reviewed, examined, went through every single asset, served notice on everyone, including Atterbury Grain. The trustee found that there was a no-asset deceit. There were no assets there. Went through it several months, if not years. There's two appeals here. Which appeal are you offering these comments? The appeal we're dealing with now that Mr. Galtagan just argued. So what occurred was the father was upset about what happened with his children because he transferred the business to them, sold it to them. They didn't pay him. And he said, I want to try to save myself, do something. And he started the new entity, Grain, G-R-A-Y-N-E, which is a confusion to me because of the spelling. But that was started, and he paid $240,000 to start it. The issue that I understand on appeal was how much, if any, of the grain was there sitting in Superior when Grain Company started. That would be the measure of damages, plus the $306,000, which is undisputed, minus the $140,000 that was paid. That would be the extent of the damages. Unless there was other value. For example, if there was an operating business that was conveyed, that would presumably have some additional value to add to it. Now, we're hearing that there was no operating business, but it seems to me these were all issues that could and should have been raised to the district court or in the brief on appeal. I don't see any of this there. That was brought up. Well, I believe it was brought up, but there was no business. Point to where it was brought up. I put in the fact that Superior – Wait a minute. You didn't file a brief. No, I did not. So you didn't bring it up in this appeal. Who did? Where was it brought up? It was brought up on the first appeal, Your Honor. How does that help us? I'm sorry. That probably doesn't help you. I hear lots of arguments in both of these cases that might have been made before, might have been made here, could have been made, but weren't made. I'm not sure what we're supposed to do with this. Well, what I'm asking is the case be remanded so that the district court makes a decision. We're not going to remand because arguments weren't brought up. Between the two of you, you better point to me where these arguments have been made. I didn't see it. I saw an argument that said there should have been a hearing, sort of. I saw an argument that said that there was a mandate from this court that dictated something, which I don't think it did. I didn't see an argument saying that there was insufficient evidence of the value that was transferred to justify this award. That seems to be what I've been hearing this morning, but I haven't found that argument made to us before. So there's my problem. You guys have a few minutes to figure out an answer to that. All right. Thank you. We'll hear from opposing counsel and then rebuttal. Thank you, Your Honors. Matthew Knoller on behalf of Appley Atterbury Grain. Judge Clifton, as you just said at the ending of the last argument, appellant's counsel in this argument are attempting to relitigate issues that have long been resolved and that were not preserved in appellant's opening brief. The only argument that appellant presented in its opening brief in this appeal is that this court's mandate limited the asset transferred by Superior Grain to its equipment and corn and that the district court lacked sufficient evidence only as to the value of the corn. But as I think every judge on the panel has now indicated, the district court had previously found that the asset transferred was Superior's entire business, and this court's previous memorandum disposition did not change that holding. So on remand, the evidence that the district court needed was evidence as to the value of Superior Grain's entire business, and appellants did not argue either before the district court or in their opening brief before this court that the district court lacked sufficient evidence as to the value of the business. So in order to resolve this appeal, all this court needs to find is that the previous memorandum disposition did not hold as law of the case that Superior Grain only transferred its equipment and corn. Once this court resolves that issue, it will have resolved the only issue that has been preserved in this appeal, and it can simply affirm the district court's judgment on that basis. If I could, I'd just like to respond briefly to some of the factual claims or other claims that appellants' counsel have made that I think are way too late in the day for them to be raising now. So they've made a number of claims about how Superior Grain was bankrupt, closed, out of money, et cetera. That's completely inconsistent with the district court's finding, which is now binding on them, that Superior Grain and Grain Company were alter egos. They were the exact same company operating under different names. So what happened is that you have Superior Grain as an ongoing business concern. In 2012, after Atterbury files its arbitration proceeding, Superior Grain then just continues operating, doing the exact same work in the exact same facilities, the same employees, same management, same customers, under the name Grain Company. So there was no point in time where Superior Grain failed, closed down, and Grain Company had to come in and bail it out. It was the same company just operating over that time period under different names. That's what the district court found in its summary judgment order. This court did not disturb that finding in the previous appeal. Then on remand, the district court again found that Atterbury Grain and Grain Company or, excuse me, Superior Grain and Grain Company were alter egos, and appellants did not appeal that finding in their opening brief in this appeal. So a lot of these claims about how Superior Grain was valueless at the time of the transfer depend on ignoring that now-binding finding of alter ego liability. And, again, if I could just respond to some of the other claims about Superior Bankruptcy that were made by Grain Company's counsel, none of that has been presented to this court in this appeal, and it's just irrelevant to the issues that have been preserved. And so, you know, again, all the district court had to find was that the assets transferred, Superior Grain's entire business was worth more than the arbitration award. Appellants haven't preserved any challenge to that finding. As we argued, I think, briefly in our answering brief, even if they had preserved that issue, there was evidence of Superior Grain's entire value. So this court should affirm, unless there are any further questions. That evidence was the evidence of the gross revenues that was, I think, between $3 million and $5 million certain years, and then certain customer purchases of corn. Was there anything else? That's primarily it, Your Honor. It was the number of customers, the amount of corn that they sold to those customers each month, and then the company's gross income. We've cited a case in our answering brief, and that gross income is a proper measure for valuing the company's goodwill. I know that Mr. Cortez has raised some arguments for the first time in his reply brief that that's not the appropriate measure of goodwill under California law. We really haven't had a chance to respond to that in writing. I don't think it's been preserved and that this court shouldn't consider it. But if the court does consider it, for example, the Atisha case that Mr. Cortez cites in his reply brief does not hold. When the case went back down, did Mr. Cortez come forward with any evidence to say, listen, this business is worth less than $825,000, and here's why? No, Your Honor, and it was clear that that issue was something Mr. Cortez could have raised. So on remand, Atterbury argued that the reason the district court didn't need to reopen discovery was because the asset transferred was Superior Grain's entire business and that there was undisputed evidence that the business was more valuable than the arbitration award. In response to that argument, Mr. Cortez and Grain Company only disputed the definition of the asset transferred. They made the same argument that they're making now, that this court's memorandum disposition held as law of the case, that the asset transferred was only the equipment and corn. They did not argue before the district court or submit any evidence that if the asset transferred was Superior Grain's entire business, it was less valuable than the arbitration award, or that there was any reason to think that the financial data that Atterbury submitted in support of its motion was not truly reflective of the company's value. And if you look at some of the claims that Mr. Cortez has made in his reply brief about how Superior Grain was out of money, broke, couldn't pay its bills, you'll see that those claims are generally not paired with any citation to the record. That's because there's no evidence in the record to support them. The only evidence that Mr. Cortez cites is his client's deposition testimony that his sons had, quote-unquote, failed at running the business. I think that sort of vague statement certainly isn't evidence that the company was broke or closed or out of money. It's, at most, unexplained evidence that Mr. Cortez was disappointed in his sons. The other evidence that the reply brief cites is Superior Grain's bankruptcy filing, which declared that the company had no valuable assets or property. But, of course, at the time of the bankruptcy filing, the reason why Superior had no valuable assets or property is that it had already given everything to Grain Company, which then continued operating the exact same ongoing valuable business. If there are no further questions, I will submit. It appears not. Thank you, Counsel. Thank you, Your Honor. I would simply state that the issue of the value of the property transferred was in the record and found by this court in its opinion that it was $306,000. They're the ones that are saying the business was sold. The business was not sold. The business was not sold. The business was closed. All that was purchased was the equipment. So if we disagree with you about the reading of this court's prior memorandum disposition, what evidence did you bring forward in the district court to show that the value of the business was less than the amount of the arbitration award? The court didn't give us an opportunity to submit any evidence. The court simply took a status report and said there's no need for anybody to come in and I'm issuing this award. That was it. There was no hearing. There was no summary judgment. There was no declarations. It was simply the court's statement, which was contained in the brief, that they read each side's status report, took the case off calendar, and rendered a judgment that the amount of the award would be the same as it was before in the original case. That this court's mandate of the $306,000 minus the $140,000 was paid was not relevant or just didn't matter and basically there would be no evidence taken on that issue and it would simply be whatever the original arbitration award was. And that's the reason for this appeal. We felt that was not fair. Where is the argument made that there was insufficient evidence to support the district court's conclusion that the value transferred exceeded the amount of the arbitration award? We didn't have an opportunity to do that. Where is that argument made on appeal? In the actual, that it's in the record or that we make the argument in the briefs. Where? They were in the briefs. What I read in the briefs is a complaint about the mandate of this court not being followed. What I did not read in the briefs was an argument that the evidence was insufficient to support the summary judgment entered by the district court. The original summary judgment? No. I would say the reply brief filed in this case outlines our position that the business was worthless and is contained in the reply brief. All right. Thank you. Thank you, counsel. Do you have any other questions? No.  The case just argued is submitted for decision by the court.
judges: Rawlinson, Clifton, Bress